**In the Interest of C.C.J., A Minor.**

**Appeal of: C.C.J.**

Superior Court of Pennsylvania.

Argued Dec. 13, 2001.

Filed May 14, 2002.

Jeffrey C. Marshall, York, for appellant.

Sean Quinlan, Asst. Dist. Atty., York, for Com., appellee.

Before CAVANAUGH, STEVENS, and BECK, JJ.

STEVENS, J.

¶ 1 This is an appeal from the Order entered in the Court of Common Pleas of York County following C.C.J.'s adjudication of delinquency on the charges of conspiracy to possess marijuana with intent to deliver marijuana and possession with intent to deliver marijuana. On appeal, C.C.J. challenges the sufficiency of the evidence and the trial court's denial of his motion to suppress. We affirm.

¶ 2 We first address the sufficiency of the evidence issue. In reviewing the sufficiency of the evidence to support an adjudication of delinquency, the evidence must meet the standard of proof beyond a reasonable doubt. *In the Interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977). The Court must examine the entire record in the light most favorable to the verdict winner, in this case the Commonwealth. *Id.* The Court must also consider all of the inferences which may be drawn from the evidence presented. *In re D.D.*, 409 Pa.Super. 35, 597 A.2d 648 (1991).

¶3 The instant juvenile petition was based on the actions of the York City Police Department on November 4, 2000. On that day, police officers, acting as a street crime reduction unit, were patrolling a high drug area in an unmarked vehicle and came upon a group of four individuals congregated on a sidewalk. One of the group of four was recognized as a person recently arrested on drug charges. The officers emerged and, when it appeared that two of the persons were under the age of eighteen, those two juveniles were separately approached on suspicion of truancy.

¶4 One officer engaged J.E.N., who was ultimately found to be in possession of twelve small Ziploc baggies of marijuana, while another officer approached C.C.J., the second individual who appeared to be under the age of eighteen. When questioned, C.C.J. disclosed that he was supposed to be in school but did not attend that day because he had no clean clothes. A subsequent search of C.C.J. resulted in the seizure of a Ziploc bag, which contained numerous other Ziploc baggies later described by police as "unused." N.T., 12/8/00, at 35.

¶5 The juvenile cases of J.E.N. and C.C.J. were consolidated for a suppression hearing aimed at suppression of the fruit of the searches. At the conclusion of the hearing, the trial court granted suppression as to the search of J.E.N., but denied suppression as to C.C.J.

¶6 With respect to J.E.N., the Commonwealth appealed the trial court's December 8, 2000 Order suppressing the evidence seized from the person of J.E.N. The Commonwealth argued that the trial court

erred in suppressing lawfully seized evidence obtained during a search incident to arrest in accordance with the Public School Code of 1949, 24 Pa.C.S.A. §§ 1–101–27–2702. By memorandum dated August 24, 2001, this Court reversed the trial court's order regarding suppression and remanded the matter of J.E.N. for trial.

¶7 The matter of C.C.J. came to a disposition hearing on December 27, 2000 at which time the trial court undertook to hear "post-verdict motions" filed by C.C.J.'s attorney. On January 26, 2001, the trial court denied C.C.J.'s motions on the basis that there is no provision for the filing of such motions in juvenile cases and the adjudication phase of the case was conducted. The trial court found that C.C.J. committed conspiracy to possess marijuana with intent to deliver marijuana and possession with intent to deliver marijuana, and C.C.J. was placed on probation on March 30, 2001. This timely appeal followed. The trial court ordered the filing of a Pa.R.A.P.1925(b) statement of matters complained of on appeal, such statement was filed, and thereafter the trial court filed an opinion pursuant to Rule 1925(a).

¶8 On January 29, 2002, we reviewed C.C.J.'s appeal and by memorandum dated January 29, 2002, we reversed the trial court's Order finding the stated reasons for adjudication were not supported by the evidence. Thereafter, the Commonwealth filed a petition for reconsideration claiming that this Court issued an inconsistent opinion in deciding to reverse the adjudication and vacate the disposition of C.C.J.[1]

■■■ ¶9 By Order dated March 19, 2002, we granted the Commonwealth's pe-

---

1. The inconsistency stemmed from this Court's erroneous reliance on the suppression of evidence in the matter of *In the Interest of J.E.N.*, No. 184 MDA 2001, unpublished memorandum, 785 A.2d 1041 (Pa.Super. filed Au-

gust 24, 2001). In J.E.N., by memorandum dated August 24, 2001, this Court reversed the trial court's grant of J.E.N's suppression motion, and we ordered the admission of the improperly suppressed evidence.

tition for reconsideration. By Order dated March 15, 2002, the original memorandum filed by this Court on January 29, 2002 was withdrawn. We now reconsider the appeal of C.C.J. from the order entered March 30, 2001 in the Court of Common Pleas of York County.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a coconspirator. Proof of a conspiracy is almost always extracted from circumstantial evidence. The Commonwealth may present a "web of evidence" linking the defendant to the conspiracy beyond a reasonable doubt. Even if a conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his coconspirators taken in furtherance of the conspiracy.

*Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa.Super.2000) (citations omitted).

¶ 10 In order to establish possession with intent to deliver, the Commonwealth must prove both possession of a controlled substance and the intent to deliver that substance. *Id.*

¶ 11 Indisputably, the record is clear that the evidence of actual possession of marijuana among the four individuals congregated on the sidewalk consisted of:

1) Greenslade, an adult, was in possession of a large bag of marijuana.

2) J.E.N., a juvenile, was in possession of twelve small baggies of marijuana.

3) C.C.J., a juvenile, was in possession of numerous unused Ziploc baggies.

¶ 12 The trial court, in its opinion, reasoned that in conjunction with Greenslade's possession of marijuana, and "others" possession of marijuana, there was sufficient evidence to find that C.C.J. engaged in conspiracy to commit the offense of possession with intent to deliver marijuana. We agree. The trial court in this matter had before it sufficient evidence to adjudicate C.C.J. delinquent.

¶ 13 This is a drug case involving C.C.J.'s presence (1) in a high drug area with drug packaging materials on his person; (2) standing with a person with drugs on his person packaged in materials identical to those on C.C.J.'s person; and (3) standing with another person with a large quantity of marijuana in a large plastic bag. C.C.J.'s conspiracy conviction is supported by evidence that C.C.J. possessed numerous unused Ziploc baggies; that adult Greenslade possessed a large bag of marijuana; and that J.E.N. possessed twelve small baggies of marijuana. The record, therefore, clearly supports C.C.J.'s adjudication of delinquency as to conspiracy and possession with the intent to deliver.

¶ 14 Next, we look to review the trial court's refusal to grant a motion to suppress as it relates to C.C.J. C.C.J. first argues that there was insufficient evidence to establish articulable suspicion to justify the stop and eventual detention and his arrest. Our standard of review in this regard is well settled.

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses

and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992).

In order to justify an investigatory stop, the police must have, at its inception, a reasonable suspicion that criminal activity is afoot. The police must be able to point to specific and articulable facts which reasonably support that suspicion. Particularly, police must possess both suspicious conduct on the part of the persons so detained and a reasonable belief of some sort of criminal activity.

In determining whether a reasonable suspicion exists, we must look to the totality of the circumstances.

*Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa.Super.1998), *appeal denied,* 558 Pa. 617, 737 A.2d 741 (1999) (citations omitted).

¶ 15 "Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal." *Riley*, 715 A.2d at 1135. "A combination of circumstances, none of which taken alone would justify a stop, may be sufficient to achieve a reasonable suspicion." *Id.*

¶ 16 Upon review of the Public School Code, we find the power of the police to arrest set forth at 24 P.S. § 13–1341, Duty to employ; power to arrest; certification. Municipal police, such as the police in this case, have full police power without warrant, and may arrest or apprehend any child who fails to attend school in compliance with the provisions of the Code. 24 P.S. § 13–1341(a), (c).

¶ 17 Upon review of the record, it is clear that the police had the requisite reasonable suspicion that criminal activity was afoot in that they observed C.C.J. who appeared to be of school age youth, on a public street during a time when school was in session. The apparent age of C.C.J. was sufficient to warrant the investigatory detention. Thus, C.C.J. was subject to a valid investigatory stop and a brief period of detention while police investigated their suspicion of truancy.

¶ 18 Next, we look to determine whether the police had probable cause to arrest C.C.J. for noncompliance with the attendance provisions of the Code.

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

*Commonwealth v. Gwynn*, 555 Pa. 86, 98, 723 A.2d 143, 148 (1998), (*citing Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979)).

Probable cause justifying a warrantless arrest is determined by the "totality of the circumstances." Where the facts and circumstances within a police officer's knowledge would warrant a person of reasonable caution to believe that an offense has been committed, probable cause typically exists.

*Commonwealth v. Myers*, 728 A.2d 960, 962 (Pa.Super.1999) (citations omitted). *See Commonwealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330 (1991).

¶ 19 The record reveals that upon the police approaching C.C.J. to investigate

the matter, C.C.J. disclosed that he was supposed to be in school but was not there because he had no clean clothes. This disclosure by C.C.J., in conjunction with his apparent age and the fact that the observation was made during the hours of normal school operation, was sufficient to warrant C.C.J.'s arrest. Thus, the seizure was the result of a properly performed search of C.C.J.'s person incident to a valid arrest. "An officer may conduct a full custodial search of a suspect when the suspect is lawfully arrested." *Commonwealth v. Thompson*, 778 A.2d 1215, 1221 (Pa.Super.2001).

¶ 20 We next turn to C.C.J.'s contention that the provisions of the Public School Code, specifically 24 P.S. § 13–1341 and § 13–1327, are overly broad, vague and, therefore, unconstitutional. C.C.J. claims that the Public School Code fails to define the conduct for which a child or parent may be charged or arrested for a violation thereof.

¶ 21 At the outset, we note that properly enacted statutes enjoy a strong presumption of constitutionality. *Commonwealth v. Miller*, 455 Pa.Super. 534, 689 A.2d 238 (1997). Our standard of review is limited to a consideration of whether the legislation at issue is clearly, palpably, and plainly in violation of the constitution. *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957 (1995).

A statute is unconstitutionally vague where it fails to provide reasonable notice of the conduct to the person charged with violating its prohibitions. Importantly, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged, and in view of the specific facts of the case before us. Thus, one may not successfully challenge a statute for vagueness when his conduct clearly falls within the prohibited acts set forth therein.

*Commonwealth v. Balog*, 448 Pa.Super. 480, 672 A.2d 319, 322 (1996) (citations omitted).

¶ 22 This Court is unable to accept C.C.J.'s reasoning that the Public School Code fails to define the conduct for which he was arrested. A careful reading of § 13–1327, in conjunction with § 13–1333 and § 13–1341, clearly provides a person of ordinary intelligence fair notice of the contemplated conduct that is forbidden.

¶ 23 Section 13–1327 requires that "every child of compulsory school age having a legal residence in this Commonwealth . . . . . is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language." 24 P.S. § 13–1327.

¶ 24 Section 13–1333, with the heading 'Penalties for Violation of Compulsory Attendance Requirements,' states the exclusive sanctions that may be applied for violation of the compulsory attendance requirements.

¶ 25 The authority of the police to arrest under the Public School Code is provided for in 24 P.S. § 13–1341 for "any child who fails to attend school in compliance with the provisions of this act. . . ."

¶ 26 We conclude that the aforementioned sections of the Public School Code clearly define the conduct for which a child may be charged in violation thereof. Specifically, we find no ambiguity or vagueness in the phrases "required to attend school" or in the terminology of § 13–1341, authorizing full arrest power for "any child who fails to attend school. . . ." Moreover, we conclude that the statute is not unconstitutionally vague as applied to C.C.J.'s specific conduct since the basis for his arrest was his failure to attend school.

¶ 27 Accordingly, we conclude that the compulsory attendance provisions of the Public School Code are not unconstitutional. We further conclude that because C.C.J.'s conduct falls clearly within the clearly defined prohibitions set forth therein, he may not complain of vagueness.

■ ¶ 28 The final issue for this Court's consideration is the age of C.C.J. at the time of his arrest with respect to lawful application of the compulsory school age provisions of the Public School Code. Specifically, C.C.J. contends that his custodial detention and arrest was not supported by sufficient probable cause without first ascertaining his age to determine if he was in violation of the compulsory attendance provisions of the Public School Code. According to C.C.J., had the officers asked him his age at the time of the stop, they would have learned that he was seventeen and not of compulsory school age.

¶ 29 The definition section of the Public School Code, 24 P.S. § 13–1326 provides the following definition of "compulsory school age":

> The period of a child's life from the time the child's parents elect to have the child enter school, which shall be not later than at the age of eight (8) years, until the age of seventeen (17) years. The term shall not include any child who holds a certificate of graduation from a regularly accredited senior high school.

¶ 30 The testimony offered by the Commonwealth in this case shows that prior to arrest, the officer had sufficient knowledge to believe that C.C.J. was in violation of the truancy laws. In fact, the officer specifically asked C.C.J. whether he was supposed to be in school, to which C.C.J. responded affirmatively. The officer who approached C.C.J. described the encounter as follows:

> When I first encountered him, we kind of had a casual conversation and I asked him if he went to school and he stated that he went to William Penn and he was in 11th grade and I asked him, at that point, why he wasn't in school and he stated that he didn't have any clean clothes to wear that day.

N.T., 12/8/00, at 32.

¶ 31 The arresting officer reasonably relied upon C.C.J.'s representations in forming probable cause to arrest and patted him down in order to facilitate the arrest.

■ ¶ 32 C.C.J. contends that the officer had a duty to investigate his story prior to arrest. We disagree. Police officers may reasonably rely upon representations made to them and have no affirmative duty to perform on-the-scene investigations. Moreover, even if information provided to the arresting officer at the time of arrest is later shown to be inaccurate, the arresting officer is still justified in relying on information as it is presented to him at the time of arrest. *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813, 816 (1981). This Court, "in hindsight, will not invalidate an arrest when the arresting officer reasonably relied upon information which he had no reason to believe was incorrect." *Id.*

¶ 33 Accordingly, we affirm the order of the trial court.

¶ 34 Affirmed.