J-S09021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK A. WASHINGTON IV | |
| Appellant | No. 2821 EDA 2016 |

Appeal from the Judgment of Sentence Entered August 3, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0003427-2015

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 26, 2017**

Appellant Frank A. Washington, IV appeals from the August 3, 2016 judgment of sentence entered in the Court of Common Pleas of Chester County ("trial court"), following his jury convictions for two counts of possession of a controlled substance (phencyclidine and cocaine, respectively), and possession of drug paraphernalia.[1]  Upon review, we affirm.

Following a traffic stop on August 1, 2015, Appellant was charged with, *inter alia*, the above-referenced offenses.  Appellant filed an omnibus motion to suppress all evidence obtained because he alleged that Corporal Jonathan

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16) and (a)(32).

Shave did not have probable cause to arrest him for DUI. The trial court conducted a hearing on the suppression motion, at which the Commonwealth offered the testimony of the arresting officer. The trial court summarized the suppression testimony as follows:

> On August 1, 2015, at approximately 11:26 p.m., Corporal Jonathan Shave of the City of Coatesville Police Department was in a marked vehicle on patrol in the 300 block of Chestnut Street, at the intersection of North 3rd Avenue in the City of Coatesville, Chester County, PA. Corporal Shave was travelling westbound in the 300 block of East Chestnut Street when he approached a traffic light at the intersection of North 3rd Avenue and Chestnut Street. Corporal Shave was stopped behind the second car at the light. When the light changed to green, the lead vehicle did not move.
>
> Corporal Shave operated his overhead lights and drove around the second vehicle and pulled up on the driver's side of the lead vehicle. Corporal Shave made contact with the driver, who was identified as [Appellant]. When Corporal Shave first exited his vehicle, before making contact with [Appellant], he "was struck with a very strong odor of Phencyclidine or PCP." Corporal Shave testified that there was no question that what he smelled was the controlled substance PCP, because there is no other substance that smells like that. When Corporal Shave made contact with [Appellant], he observed that [Appellant] had a cigarette in his hand, burned down to the filter, emanating the smell of PCP. Corporal Shave testified that in his experience, this is consistent with someone smoking PCP.
>
> Corporal Shave further observed that once he began communicating with [Appellant], he would ask [Appellant] a question and he did not immediately get a response from [Appellant]. Corporal Shave testified that this was consistent with someone using PCP. [Appellant] was also crying. Corporal Shave called for back-up because he was unsure of how [Appellant] would act being under the influence of PCP.
>
> After the second officer arrived, Corporal Shave asked [Appellant] to exit the vehicle. Corporal Shave observed that [Appellant] was unsteady on his feet. Corporal Shave placed [Appellant] in handcuffs because in his experience, individuals who use PCP can become violent and Corporal Shave was uncertain as to how [Appellant] would act. Corporal Shave arrested [Appellant] for driving under the influence based upon his observations and experience, concluding that [Appellant] was under the influence of PCP and unfit to operate the vehicle.

Trial Court Opinion, 9/27/16, at 2-4 (internal record citations omitted). On February 24, 2016, the trial court denied Appellant's suppression motion. The case proceeded to a jury trial, following which Appellant was convicted of two counts of possession and possession of drug paraphernalia. On August 3, 2016, the trial court sentenced Appellant to a term of 7 to 23 months' imprisonment for possession of PCP and a concurrent term of 7 to 23 months' imprisonment for possession of cocaine. The trial court also sentenced Appellant to one year of probation for possession of drug paraphernalia to be served consecutively to the two possession counts.

Appellant timely appealed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising a single issue. Specifically, Appellant challenged the trial court's findings of fact rendered in support of its denial of his suppression motion.[2] In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant's assertion of error did not merit relief.

On appeal,[3] Appellant repeats the same argument. After careful review of the record and the relevant case law, we conclude that the trial

---

[2] Appellant challenged the trial court's legal conclusions only to the extent that they were based on findings of fact unsupported by the record.

[3] In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the

*(Footnote Continued Next Page)*

- 3 -

court accurately and thoroughly addressed the merits of Appellant's claim. ***See*** Trial Court Opinion, 9/27/16, at 5-10. We agree with the trial court's conclusion that Corporal Shave had probable cause to arrest Appellant for DUI when he observed Appellant's vehicle blocking a lane of traffic, smelled a strong odor of PCP, observed Appellant with a cigarette in his hand that emanated a smell of PCP, did not receive prompt responses to his questions, and observed Appellant crying. Therefore, Corporal Shave's subsequent inventory search of the car and the search of Appellant incident to arrest were valid. Accordingly, we affirm Appellant's August 3, 2016 judgment of sentence. We further direct that a copy of the trial court's September 27, 2016 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

---

*(Footnote Continued)* ────────────

prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. ***In the interest of L.J.***, 79 A.3d 1073, 1088-89 (Pa. 2013).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017

COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS

                 : CHESTER COUNTY, PENNSYLVANIA

         VS.                  : CRIMINAL ACTION

FRANK WASHINGTON           : NO. CP-15-CR-0003427-2015

Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney, on behalf of the
     Commonwealth of Pennsylvania
H. Peter Jurs, Esquire, Assistant Public Defender, on behalf of Defendant

## OPINION

Defendant appeals from the judgment of sentence entered in this matter on

August 3, 2016 following a jury trial and conviction for possession of phencyclidine, possession

of cocaine and use of or possession with intent to use drug paraphernalia. We write in support of

judgment in accordance with Pa.R.A.P. 1925(a).

## PROCEDURAL HISTORY

The charges against Defendant arose from an incident on August 1, 2015 wherein

Defendant was detained for failing to proceed through a traffic light when it turned green. When

the officer approached the stopped vehicle, he could smell the odor of phencyclidine (PCP) that

grew stronger as he got closer to Defendant. There was also an open bottle of tequila in the

vehicle. Defendant exhibited signs of having ingested controlled substances or alcohol.

Defendant was arrested for driving under the influence of alcohol or a controlled substance.

Following a search of Defendant incident to arrest and an inventory search of the vehicle, a small

bag containing a white, powdery substance and a piece of rolled up paper containing a green

leafy substance were discovered. These substances subsequently tested positive for cocaine and

marijuana.

COC 09/29/2016 08:45

Following a jury trial commencing May 25, 2016, Defendant was found guilty of possession of a PCP, possession of cocaine and use of or possession with the intent to use drug paraphernalia. Defendant was sentenced on August 3, 2016 to 7 to 23 months imprisonment for possession of PCP; 7 to 23 months imprisonment for possession of cocaine, to be served concurrently with the sentence for possession of PCP; and 1 year probation for use of or possession with the intent to use drug paraphernalia, to be served consecutively to the other two sentences. Defendant timely filed a Notice of Appeal on August 26, 2016.

## DISCUSSION

In his Concise Statement of Matters Complained of on Appeal, Defendant argues that the Court erred in denying his motion to suppress evidence. Specifically, Defendant argues that the police had no probable cause to arrest him for driving under the influence of alcohol or a controlled substance; therefore, any evidence discovered on his person and in the vehicle was illegally seized.

The following facts were elicited during the suppression hearing on February 17, 2016.[1] On August 1, 2015 at approximately 11:26 p.m., Corporal Jonathan Shave of the City of Coatesville Police Department was in a marked vehicle on patrol in the 300 block of Chestnut Street, at the intersection of North 3rd Avenue in the city of Coatesville, Chester County, PA. (N.T., 2/17/2016, 5-6). Corporal Shave was traveling westbound in the 300 block of East Chestnut Street when he approached a traffic light at the intersection of North 3rd Avenue and Chestnut Street. (N.T. 2/17/2016, 6). Corporal Shave was stopped behind the second car at the light. (N.T. 2/17/2016, 6). When the light changed to green, the lead vehicle did not move.

---

[1] During the suppression hearing, Defendant conceded that the motor vehicle stop was valid. (N.T. 2/17/2016, 3).

2

COC 09/29/2016 08:45

(N.T. 2/17/2016, 7). Corporal Shave observed a female exit the passenger side of the vehicle and heard a male crying in the vehicle. (N.T. 2/17/2016, 7).

Corporal Shave operated his overhead lights and drove around the second vehicle and pulled up on the driver's side of the lead vehicle. (N.T. 2/17/2016, 8). Corporal Shave made contact with the driver, who was identified as Defendant. (N.T. 2/17/2016, 8). When Corporal Shave first exited his vehicle, before making contact with Defendant, he "was struck with a very strong odor of Phencyclidine or PCP." (N.T. 2/17/2016, 8). Corporal Shave testified that there was no question that what he smelled was the controlled substance PCP, because there is no other substance that smells like that. (N.T. 2/17/2016, 9). When Corporal Shave made contact with Defendant, he observed that Defendant had a cigarette in his hand, burned down to the filter, emanating the smell of PCP. (N.T. 2/16/2016, 9,19). Corporal Shave testified that in his experience, this is consistent with someone smoking PCP. (N.T. 2/17/2016, 9).

Corporal Shave further observed that once he began communicating with Defendant, he would ask Defendant a question and he did not immediately get a response from Defendant. (N.T. 2/17/2016, 9). Corporal Shave testified that this was consistent with someone using PCP. (N.T. 2/17/2016, 10). Defendant was also crying. (N.T. 2/17/2016, 10). Corporal Shave called for back-up because he was unsure of how Defendant would act being under the influence of PCP. (N.T. 2/17/2016, 10).

After the second officer arrived, Corporal Shave asked Defendant to exit the vehicle. Corporal Shave observed that Defendant was unsteady on his feet. (N.T. 2/17/2016, 10). Corporal Shave placed Defendant in handcuffs because in his experience, individuals who use PCP can become violent and Corporal Shave was uncertain as to how Defendant would act. (N.T. 2/17/2016, 10). Corporal Shave arrested Defendant for driving under the influence based

3

upon his observations and experience, concluding that Defendant was under the influence of PCP and unfit to operate the vehicle. (N.T. 2/17/2016, 11). Corporal Shave did not administer field sobriety tests. Corporal Shave testified that Defendant was not verbally abusive, did not attempt to flee and was able to provide his name and answer some of Corporal Shave's questions. (N.T. 2/17/2016, 20).

After placing Defendant under arrest, Corporal Shave observed a bottle of tequila on the passenger seat with about a fifth remaining in the bottle. (N.T. 2/17/2016, 11). Corporal Shave testified that he saw the bottle of tequila in plain view when he first made contact with Defendant. (N.T. 2/17/2016, 13). Corporal Shave then conducted an inventory search of the vehicle pursuant to the Coatesville Police Department procedure and observed rolled up paper in the cup holder containing marijuana. (N.T. 2/17/2016, 11, 13). Corporal Shave searched Defendant incident to arrest before placing him in the police vehicle and seized from Defendant's person a peach colored clear bag containing a white rock substance which was field tested and later determined to be cocaine. (N.T. 2/17/2016, 14). Corporal Shave ordered the vehicle to be towed as it was in the middle of the intersection blocking traffic. (N.T. 2/17/2016, 12).

The motor vehicle recording (MVR) from Corporal Shave's vehicle revealed that Defendant was crying and unsteady on his feet when he exited his vehicle. (Exhibit C-2). Defendant continued to cry through the entirety of the video. While Defendant could be heard providing answers to Corporal Shave's questions, his speech and his movements were not normal. While Defendant was quick to answer some of the questions posed by Corporal Shave, in answering other questions posed by the corporal, it was as if Defendant did not even hear the question.

4

COC 09/29/2016 08:45

The totality of circumstances must be considered when determining whether probable cause exists to justify a warrantless arrest. Commonwealth v. Dommel, 885 A.2d 998, 1002 (Pa.Super. 2005).

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. In Re C.C.J., 799 A.2d 116, 121 (Pa.Super. 2002) (quoting Commonwealth v. Gwynn, 555 Pa. 86, 98, 723 A.2d 143, 148 (1998).

Dommel, at 1002. The standard of probable cause requires only a probability and not a *prima facie* showing of criminal activity. Commonwealth v. Monaghan, 295 Pa.Super. 450, 441 A.2d 1318 (1982) (citation omitted). An officer's experience is a relevant factor in determining probable cause if there is a nexus between the officer's experience and the search and seizure. Commonwealth v. Thompson, 604 Pa. 198, 210, 985 A.2d 928, 935 (2009).

Contrary to Defendant's argument, Corporal Shave possessed the requisite probable cause to arrest Defendant for driving under the influence of alcohol or a controlled substance. When Corporal Shave pulled up behind Defendant's vehicle, he was stopped at a red light. When the light turned green, Defendant did not proceed forward with the flow of traffic. Corporal Shave observed a female get out of the passenger side of the vehicle and heard Defendant crying. Defendant's vehicle was blocking the roadway and interfering with the flow of traffic. At that point, Corporal Shave had probable cause to stop Defendant for a motor vehicle violation and in fact did charge Defendant with one count of stopping, standing, and parking outside a business and residence district. 75 Pa.C.S.A. § 3351.

Because Defendant did not move his vehicle when the light turned green, Corporal Shave drove to the driver's side of the vehicle to make contact with Defendant. When

5

COC 09/29/2016 08:46

Corporal Shave first exited his vehicle, he noticed a strong odor of PCP that grew stronger as he got closer to Defendant and the vehicle. Corporal Shave has been with the Coatesville Police Department since 2011 and has made approximately 50 arrests for driving under the influence of alcohol or a controlled substance. (N.T. 2/17/2016, 4-5). During his training at the Delaware County Police Academy, Corporal Shave received instruction on identifying individuals under the influence of a controlled substance or alcohol. (N.T. 2/17/2016, 5).

Corporal Shave has had regular contact with individuals under the influence of controlled substances in his position with the Coatesville Police Department. (N.T. 2/17/2016, 5). Since joining the Coatesville Police Department in 2011, Corporal Shave has observed individuals under the influence of PCP approximately twenty times. (N.T. 2/17/2016, 7-8). Corporal Shave was certain he smelled PCP because it carries a distinct odor that is not similar to the odor from any other controlled substances. This distinct odor was emanating from Defendant's cigarette, which he had smoked down to the filter. In Corporal Shave's experience, this is consistent with PCP use.

Defendant's demeanor and conduct during questioning further led Corporal Shave to conclude Defendant was using PCP. When Defendant exited the vehicle, he was unsteady on his feet, still crying and gave delayed responses and sometimes no responses to Corporal Shave's questions. Therefore, the totality of circumstances as viewed through Corporal Shave's experience and training, including smelling an odor of PCP and Defendant's demeanor and conduct, give rise to probable cause to arrest Defendant for driving under the influence of a controlled substance.

6

The fact that Corporal Shave smelled the odor of PCP is reasonable grounds, by itself, to request chemical testing to determine if Defendant is under the influence of a controlled substance. In Commonwealth v. Jones, 121 A.3d 524 (Pa.Super. 2015), the Superior Court determined that the smell of burnt marijuana emanating from the defendant's vehicle during a traffic stop was sufficient to request chemical testing of the defendant. The defendant in Jones was alone in his vehicle and a strong odor of burnt marijuana was emanating from the vehicle. Jones, at 529. PCP gives off a distinct odor and provides the same basis for probable cause as the odor of burnt marijuana.

Corporal Shave's failure to administer field sobriety tests does not preclude him from determining that Defendant was operating the vehicle under the influence of a controlled substance. Defendant was the only person in the vehicle and was behind the wheel of the vehicle. The odor of PCP emanating from the vehicle and Defendant's demeanor and conduct upon exiting the vehicle would not preclude a reasonable person from concluding that Defendant was under the influence of something, including a controlled substance. It is clear from Corporal Shave's testimony that based upon his experience with individuals under the influence of PCP, he was uncertain as to whether Defendant would become violent. Therefore, based upon the odor emanating from the cigarette and Defendant's conduct, Corporal Shave handcuffed Defendant immediately rather than conducting field sobriety tests.

Once Corporal Shave had probable cause to arrest Defendant for driving under the influence, Defendant could be searched incident to arrest. "[A] warrantless search incident to a lawful arrest is *reasonable* and no justification other than that required for the arrest itself is necessary to conduct such a search." Commonwealth v. Williams, 390 Pa.Super. 493, 498, 568 A.2d 1281, 1283 (1990) (citations omitted) (emphasis included). Corporal Shave searched

7

COC 09/29/2016 08:46

Defendant and found a peach colored bag containing a white substance later determined to be cocaine. Any evidence seized from a search incident to a lawful arrest is admissible in later proceedings. *Id*.

Finally, Corporal Shave lawfully conducted an inventory search of the vehicle following Defendant's lawful arrest. An inventory search of an automobile is permitted where: "(1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." Commonwealth v. Hennigan, 753 A.2d 245, 255 (Pa.Super. 2000). An inventory search serves one or more of the following purposes:

> (1)To protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

Hennigan, at 255 (citations omitted). The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items that are seized, benefitting both the defendant and the police. *Id*., at 254 (citations omitted). "An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Id*., at 255.

When Corporal Shave arrested Defendant, the vehicle remained in the middle of the roadway, obstructing traffic, in violation of 75 Pa.C.S.A. § 3352.[2] No one was available to drive the vehicle; therefore, Corporal Shave had the vehicle towed pursuant to paragraphs II (A)

---

[2] 75 Pa.C.S.A. § 3352 states in pertinent part,
> **(a) Outside business and residence districts.**--Whenever any police officer finds a vehicle in violation of any of the provisions of section 3351(relating to stopping, standing and parking outside business and residence districts), the officer may move the vehicle,

8

COC 09/29/2016 08:46

and (B) of the City of Coatesville Police Department Inventory Search of Towed or Impounded Vehicles. (Exhibit C-1). Prior to the vehicle being towed, Corporal Shave conducted an inventory search of the vehicle. (Exhibit C-1, ¶¶ III, IV). While conducting the inventory search, Corporal Shave found a piece of paper rolled up in a cup holder that contained marijuana. Corporal Shave also observed, in plain view on the passenger seat of the vehicle, a bottle of tequila with only a fifth remaining. The vehicle was properly towed and these items lawfully seized pursuant to the City of Coatesville's standard police procedures.

---

or cause the vehicle to be moved, or require the driver or other person in charge of the vehicle to move the vehicle, to a position off the roadway where the vehicle will not interfere unduly with the normal movement of traffic or constitute a safety hazard.

**(b) Unattended vehicle obstructing traffic.**--Any police officer may remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway, bridge, causeway or in any tunnel, in such position or under such circumstances as to interfere unduly with the normal movement of traffic or constitute a safety hazard.

**(c) Removal to garage or place of safety.**--Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

(1) Report has been made that the vehicle has been stolen or taken without the consent of its owner.

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

(4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.

(5) The vehicle has been abandoned as defined in this title. The officer shall comply with the provisions of Chapter 73 (relating to abandoned vehicles and cargos).

COC 09/29/2016 08:46

For the foregoing reasons, we respectfully submit that Defendant's allegations are without merit and the appeal should be denied.

BY THE COURT:

_Jacqueline C. Cooley_     P.J.

Date: _Sept 27, 2016_

COC 09/29/2016 09:46