J-S61018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.P. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2326 EDA 2016 |

Appeal from the Dispositional Order July 18, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-JV-0000423-2016

BEFORE:   LAZARUS, J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED NOVEMBER 21, 2017**

K.P., a minor, appeals from the dispositional order of July 18, 2016, following his adjudication of delinquency for possession of a firearm by a minor.[1]  We affirm.

The relevant facts and procedural history are as follows:

On March 1, 2016 at approximately 5:50 PM, Philadelphia Police Officer Sweeney (Badge #5412, 17th District) observed a large group of ten to fifteen males blocking the entrance to the front door of a market, located at the 2100 block of Morris Street. Officer Sweeney was in a vehicle with Officer Velasquez.  The officers approached the corner and both officers exited their vehicle.  K.P. turned away from the police and grabbed his waistband.  Officer Sweeney then asked K.P. to stop.  As the police walked toward K.P., K.P. began to flee and Officer Sweeney gave chase on foot, while his partner pursued in the police vehicle.

Officer Sweeney then observed K.P. remove a handgun from his waistband, as they turned the corner into an alley.   Officer

_____

[1] 18 Pa.C.S.A. § 6110.1

*   Retired Senior Judge assigned to the Superior Court.

Sweeney observed K.P. holding the handgun, and saw K.P. throw the handgun into the backyard of 2008 Morris Street.

Officer Sweeney was in full uniform. Prior to this incident, Officer Sweeney had made one to two arrests in that area. Officer Sweeney described the area as a "high crime area," stating that there have been shootings and a homicide within a block or two of that area. The homicide and shootings had occurred within six months of this incident. There had also been roll call complaints regarding said area. The handgun was recovered within five yards from where the [Appellant] was arrested.

Officer Sweeney did not receive any specific call to go to that location, nor was he responding to any specific complaint. Officer Sweeney observed that the young males were violating the city ordinance for blocking the front entrance of a store or blocking the sidewalk. Officer Sweeney did not issue any citation for said violation. Officer Sweeney only told K.P. to stop after K.P. began to hide his body from police and walk away. Officer Sweeney did not unstrap his weapon, nor did he have his hand on his weapon, at the time that he told K.P. to stop. Based on his observations of K.P., Officer Sweeney believed that K.P. had a gun. Once K.P. turned into the alley, K.P. was trapped in the alley.

The parties stipulated that the firearm recovered from the ground near K.P. was operable at the time that it was recovered, and that K.P. did not have a license to carry a firearm in the Commonwealth of Pennsylvania. The parties further stipulated that K.P.'s mother, A.P. and K.P.'s grandfather, A.G., that they are familiar with K.P.'s reputation in the community, and that K.P. has a reputation for being peaceful and law-abiding.

Trial Court Opinion, 1/13/17 at 2-3 (citations omitted).

On March 9, 2016, Appellant filed a motion to suppress all physical evidence, arguing that Appellant's arrest was illegal as the officers did not have probable cause or reasonable suspicion for detaining him. Appellant's Motion to Suppress at 1 (unpaginated). On March 29, 2016, a hearing was held on Appellant's motion. In May 2016, the trial court denied Appellant's motion to suppress and adjudicated Appellant delinquent. Disposition was

deferred until July 18, 2016, at which time the court entered an order placing Appellant on Youth Violence Reduction Partnership Probation, among other conditions.

Appellant timely appealed. In January 2017, the trial court filed a 1925(a) statement but did not order a 1925(b) statement. Appellant raises the following issues for our review:

1. Did not the trial court err by denying [A]ppellant's motion to suppress physical evidence under both the Federal and State Constitutions, inasmuch as reasonable suspicion that criminal activity was afoot was lacking where [A]ppellant merely turned his body away from police when he saw them and grabbed his waist, and the subsequent recovery of a firearm was the result of forced abandonment stemming from the illegal investigation detention?

2. Did the trial court err by denying [A]ppellant's motion to suppress physical evidence under both the Federal and State Constitutions, where there did not exist probable cause to arrest [A]ppellant under any Philadelphia City Ordinance?

Appellant's Brief at 3.

Appellant's first contention is that the police did not have reasonable suspicion that criminal activity was afoot in order to justify a stop and investigative detention of K.P. Appellant's Brief at 8. According to Appellant, the firearm recovered was fruit of an unlawful detention. *Id.* Thus, Appellant concludes, the trial court erred in denying Appellant's suppression motion.

In reviewing a suppression order:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are

correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

Appellant's claim turns on the nature of the encounter between Appellant and the police. We note, initially, that

[t]here are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016).

Here, the initial contact between Appellant and the police was an investigative stop. *See Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa. Super. 2014) ("Our Supreme Court has held that where 'a citizen approached by a police officer is ordered to stop … obviously a 'stop' occurs.'") (quoting *Commonwealth v. Jones*, 378 A.2d 835, 839 (Pa. 1977)). Thus, we must determine whether Officer Sweeney had reasonable suspicion that Appellant

- 4 -

was involved in criminal activity at the time of the seizure. If Officer Sweeney had reasonable suspicion of criminal activity on the part of Appellant, the gun discarded by Appellant during the chase is not subject to suppression. *See Commonwealth v. Roberts*, 133 A.3d 759, 772 (Pa. Super. 2016) (holding that contraband discarded following a lawful detention is admissible.)

> Under Pennsylvania law, any items abandoned by the individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, **before** giving chase, has at least the reasonable suspicion necessary for an investigative stop. Stated another way, when one is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered the product of coercion and is not admissible.

*In re M.D.*, 781 A.2d 192, 196 (Pa. Super. 2001) (emphasis added, internal citations and quotation marks omitted); *see also Ranson*, 103 A.3d at 77 ("[A]s pursuit by police constitutes a seizure under the law of this Commonwealth, a person may be seized even though he is moving away from the police.") (citing *Commonwealth v. Matos*, 679 A.2d 769 (Pa. 1996)).

> In deciding whether reasonable suspicion exists for an investigatory stop, our analysis is the same under both Article I, § 8 and the Fourth Amendment.
>
> > The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*In re M.D.*, 781 A.2d at 169 (citations omitted). Here, Officer Sweeney initially approaches Appellant to investigate the violation of a city ordinance. In Philadelphia, loitering is defined as:

> *(1)   Definitions*
>     a. *Loitering*.  Idling or lounging in or about any place or facility described in (2), so as to prevent others from passage, ingress or egress, or to idle or lounge in or about any place or facility described in (2) in violation of any exiting statutes or ordinances.
>
> * * *
>
> (2)   *Prohibited Conduct*.  No person shall loiter in, on or about any underground platform or concourse, or any elevated platform serving public transportation facilities, or any underground or elevated passageway used by the public, or any railroad passenger station or platform, or on the steps leading to any of them.  No person shall loiter in, on or about private property used to accommodate the public.

City of Philadelphia Ordinance, § 10-603(a)(1), (2); **see also** City of Philadelphia Ordinance, § 10-615(2)(d) (relating to disorderly conduct and related offenses).

As Officer Sweeney believed Appellant was in violation of a city ordinance he had the authority to file or issue a citation, file a complaint, or arrest Appellant. This authority is conferred by the state legislature.

> [T]he Supreme Court noted that Pennsylvania Rule of Criminal Procedure 51 provided four circumstances under which summary criminal cases may be instituted: (a) issuing a citation to the defendant; (b) filing a citation; (c) filing a complaint; or (d) arresting without a warrant when arrest is specifically authorized by law.
> * * *
> [T]he State Legislature has conferred authority on police officers in the City of Philadelphia to arrest individuals for violating city

- 6 -

ordinances. The relevant statutory provision granting such authority provides as follows:

§13349. **Summary proceedings for violation of ordinances**

Any police officer or constable, upon view of the breach of any ordinance of any city of the first class, is authorized to forthwith arrest the person or persons so offending, without any process…

53 P.S. § 13349.

*Commonwealth v. Rose*, 755 A.2d 700, 702-703 (Pa. Super. 2000) (footnotes and citations omitted), *see also In re C.C.J.*, 799 A.2d 116, 122 (Pa. Super. 2002) (finding that police had reasonable suspicion to justify an investigatory stop where a juvenile was observed in violation of the Public School Code).

Officer Sweeney testified that Appellant and a group of young men were blocking the entrance to a market. Notes of Testimony, 3/29/16 at 4, 7. As Officer Sweeney exited his vehicle, he observed Appellant turn his body, grab his waistband, and begin to walk away. *Id.* Based on his observations, Officer Sweeney approached and asked Appellant to stop. *Id.* Appellant then began to run, and Officer Sweeney gave chase. *Id.* at 4-5. While running Officer Sweeney observed Appellant remove a firearm from his waistband and throw it into the backyard of 2008 Morris Street. *Id.* Considering the totality of these circumstances, Appellant was subject to a valid investigatory stop and brief detention by the police. Accordingly, the firearm discarded during flight

was admissible, and the trial court properly denied Appellant's motion to suppress. **Roberts**, 133 A.3d at 772.

Appellant next contends that the police lacked probable cause for an arrest. Appellant's Brief at 23. Appellant further asserts that the trial court did not make a finding that he violated an ordinance and that the officer's testimony was insufficient to support probable cause for a violation of any ordinance. Appellant's Brief at 19-20. We reject the premise of Appellant's claim as probable cause is not the relevant standard. **See In re C.C.J.**, 799 A.2d at 121. ("In order to justify an investigatory stop, the police must have, at inception of stop, a reasonable suspicion that criminal activity is afoot."). Accordingly, we need not address this issue.

Order affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/21/2017*

- 8 -