J-S06044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEVIN PATTERSON | : | |
| | : | |
| Appellant | : | No. 1149 WDA 2025 |

Appeal from the PCRA Order Entered August 21, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0015124-2017

BEFORE:   KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: MARCH 23, 2026**

Appellant Tevin Patterson appeals the order of the Court of Common Pleas of Allegheny County denying his petition pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant argues that trial counsel was ineffective in failing to file a suppression motion alleging Appellant was subjected to an illegal warrantless arrest.  We affirm.

On June 10, 2021, Appellant was convicted of first-degree murder, burglary, and carrying a firearm without a license in connection with the August 8, 2017 shooting death of Calvin Turner.  The factual background of this case was previously summarized as follows:

> On August 8, 2017, at approximately 3 p.m., UPMC security guard, David Thoma, was in the area of the Oak Hills Apartments in the City of Pittsburgh getting lunch and heard several gunshots.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

After hearing the gunshots, he proceeded to search the area in his vehicle and observed an African American male, later identified as Appellant, wearing a yellow hoodie and jeans missing a shoe running between the apartments down a thruway. Thoma made visual contact with Appellant who then put the hood up on his hoodie. Thoma initiated a conversation with Appellant who made statements that he was looking for his sister. Thoma observed Appellant to be out of breath and bleeding from the lip. Thoma exited his vehicle, but Appellant took off running toward the back of the apartment complex. Thoma pulled his taser and commanded Appellant to stop; however, Appellant continued to flee the area and he was unable to apprehend him at that time. He then contacted 9-1-1 to report the encounter.

Curt Colotto, a maintenance worker for Oak Hills Apartments, was in the area at the time of the shooting and was standing next to his vehicle when he witnessed Appellant come from behind 475 Oak Hill Drive and proceed into the woods. Appellant was wearing a yellow hoodie but Colotto did not recall what type of shoes he was wearing.

Officer John Baker of the City of Pittsburgh police responded to a shots fired call in the Oak Hill neighborhood at approximately 3:02 p.m. He proceeded to the area and subsequently received information that a male had been shot in the head and that the suspect had run into a nearby wooded area. He proceeded toward the wooded area and observed Appellant emerge from the woods without a shirt or shoes. He exited his vehicle and commanded Appellant to stop. Appellant stopped briefly putting his hands in the air and stated, "I didn't do it," but then absconded down the sidewalk running into the woods. A chase ensued and Appellant was apprehended and taken into custody at approximately 3:12 p.m.

Officer Tanya Szuch with the City of Pittsburgh police and her partner, Officer David McManus, responded to the victim's residence after receiving a report that Jamal Blair and Arneta Dyer had returned to their home located at 525 Oak Hill Drive and had found their son, Calvin Turner [("the victim")], deceased laying at the bottom of the staircase blocking the front door. Upon arrival, they located the victim deceased at the bottom of the steps laying on his stomach in a pool of blood. They secured the residence finding no one else in the home and contacted the homicide division.

Thereafter, homicide Detective Robert Shaw of the Pittsburgh Police responded to the victim's residence and he, along with detectives Kraeer and Crawford, processed the scene. The rear door of the residence did not appear to have any damage which would have indicated a forced entry. However, the windows in the kitchen were open, but Detective Shaw had received information that the windows had been shut prior to the incident. The victim's body was positioned at the bottom of the steps and by the front door, thus blocking entry or exit through that door. A child's toy gun and an empty backpack were located in close proximity to the body with a pair of gray sneakers and a single orange multi-colored sneaker was located at the victim's thigh. Several bullet strikes and holes were located in the ceiling at the top of the steps. A firearm was located in the victim's dresser drawer wrapped in a sock and two broken cell phones were also recovered from the scene.

Evidence was recovered from the wooded area where Appellant was apprehended, which included a single orange sneaker matching the orange sneaker found next to the victim's body, and a yellow Charlie Brown hoodie with debris and blood stains on the right sleeve and high velocity impact blood spatter on the front of the hoodie. The detective photographed Appellant on the day of the murder after he was taken into custody, which showed an injury to his right elbow area consistent with the blood stain found on the hoodie recovered from the wooded area. Appellant did not have any further noticeable injuries.

Upon autopsy, the victim was found to have sustained four penetrating gunshot wounds, which included a gunshot wound to the left perioral area of the face with the bullet recovered from the right cheek and three gunshot wounds to the victim's chest, which perforated the right lower and upper lobes of the left lung, a rib, the pericardium, the right and left ventricles of the heart, as well as the right lung with the manner of death ruled a homicide. The four bullets recovered from the victim were found to have been discharged from the same firearm but not from the firearm recovered at the victim's residence. GSR tests performed on Appellant's hands showed seven single component particles. The blood stains on the sleeve of the recovered yellow hoodie matched that of Appellant, and the blood stains recovered from the front of the hoodie matched that of the victim. Appellant did not possess a license to carry a firearm.

*Commonwealth v. Patterson*, 913 WDA 2022 (Pa.Super. October 24, 2023) (unpublished memorandum) (quoting Trial Court Opinion (T.C.O.), 1/9/23, at 4-8 (citations and footnotes omitted)).

Appellant proceeded to a jury trial which was held on June 8-10, 2021. At the conclusion of trial, the jury convicted Appellant of the aforementioned charges. On October 7, 2021, the trial court sentenced Appellant to life imprisonment without the possibility of parole for the murder conviction, five to ten years' imprisonment for the burglary conviction and two to four years' imprisonment for the firearms conviction. All sentences were set to run consecutively. On October 24, 2023, this Court affirmed the judgment of sentence. Appellant did not file a petition for allowance of appeal.

On February 13, 2024, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed Appellant counsel, who filed an amended petition claiming trial counsel was ineffective in failing to file a suppression motion arguing that Appellant was subjected to an illegal warrantless arrest.

On July 15, 2025, the PCRA court filed notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On August 21, 2025, the PCRA court denied the petition. This timely appeal followed.

Our standard of review is as follows:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party.

- 4 -

With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

*Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa.Super. 2019) (quoting

*Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601, 617 (2015) (internal

citations and quotation marks omitted)).

In reviewing a claim of ineffectiveness of counsel, we are guided by the

following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018)

(quoting *Commonwealth v. Natividad*, 598 Pa. 188, 207-208, 938 A.2d

310, 321 (2007)).

In his sole claim on appeal, Appellant argues that trial counsel was

ineffective in failing to file a suppression motion as he believes that he was

subjected to an illegal warrantless arrest unsupported by probable cause.

Appellant asserts that David Thoma, the security guard who reported hearing

gunshots and observed Appellant running near the crime scene, only offered responding officers a generic description of the suspect he saw. Appellant claims Thoma's description of the fleeing suspect gave the arresting officers no information on the suspect's physical attributes (e.g. age, height, weight, facial hair, or other defining characteristic) or as to what crime the man purportedly committed. Appellant points out that Thoma reported that the suspect had black pants, when Appellant was found wearing jeans.

"It is axiomatic that the validity of a warrantless arrest is determined by considering whether, at the moment the arrest was made, the officer had probable cause to make it, and the person arrested is believed to be the guilty party." ***Commonwealth v. Floyd***, 313 A.3d 1061, 1065 (Pa.Super. 2024) (quoting ***Beck v. Ohio***, 379 U.S. 89, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142, (1964)) (internal quotation marks and other citation omitted).

> "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." ***Commonwealth v. Dommel****,* 885 A.2d 998, 1002 (Pa.Super. 2005), *appeal denied,* 591 Pa. 722, 920 A.2d 831 (2007) (quoting ***In re C.C.J.****,* 799 A.2d 116, 121 (Pa.Super. 2002)). "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" ***Id.*** (quoting ***Commonwealth v. Myers****,* 728 A.2d 960, 962 (Pa.Super. 1999)). Furthermore, "probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'" ***Id.*** (quoting ***Commonwealth v. Wright****,* 867 A.2d 1265, 1268 (Pa.Super. 2005), *appeal denied,* 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied,* 546 U.S. 1104, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006)).

*Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa.Super. 2008). "[P]robable cause for a warrantless arrest requires only the probability, and not a prima facie showing, of criminal activity." *Floyd*, 313 A.3d at 1065 (citation omitted).

This Court has found that probable cause to effectuate a warrantless arrest may arise when officers are provided a general description of the suspect, who is subsequently found in close physical and temporal proximity to the suspected criminal activity. In *Commonwealth v. Chase*, 575 A.2d 574 (Pa.Super. 1990), this Court upheld a warrantless arrest of an individual described as "a black man in a blue shirt" who had purchased narcotics at a particular street corner from an undercover officer. Although the arresting officer did not observe the drug transaction, the arresting officer arrived at the precise location of the drug deal within minutes of the completed transaction. *Id.* at 173-74. Given that the defendant matched the general description of the suspect, was found in close proximity in time and place of the drug transaction, and fled from police, this Court found the appellant's arrest was not illegal. *Id.*; *see also Commonwealth v. Williams*, 464 A.2d 411, 415 (Pa.Super. 1983) (probable cause justified warrantless arrest of rape suspect matching general description of a "black man with a mustache" who was detained within minutes of the initial police report after he was spotted running from the area where the rape occurred and fled from police).

Viewing the totality of the circumstances in this case, we agree Appellant's warrantless arrest was justified as the officers had probable cause

to believe Appellant was the perpetrator responsible for the shooting that had occurred just minutes earlier. Officer Thoma, who observed Appellant fleeing from the Oak Hill Apartments into the woods immediately after the shots were fired, provided 9-1-1 with a general description of Appellant's appearance, including what he was wearing.

The criminal complaint states that the arresting officers received a dispatch indicating that a suspicious male without a shoe had been observed fleeing the area where the shots were fired. The arresting officers arrived at the scene within minutes of the dispatch and observed Appellant, now shirtless and shoeless, exiting the wooded area in the precise area that he had been reported. When officers announced their presence to Appellant, his immediate reaction was to yell "I didn't do it," and to turn and flee again. After officers chased Appellant back into the woods, they were able to apprehend him within approximately twelve minutes of the reported gunshots.

Given that Appellant matched the general physical description of the suspect, was found in close proximity in time and place to the fatal shooting of the victim, and fled immediately from the police, we conclude that the arresting officers were justified in conducting the warrantless arrest.

As Appellant's underlying claim lacks merit, he is not entitled to relief on his ineffectiveness challenge. *Commonwealth v. Hannibal,* 638 Pa. 336, 371, 156 A.3d 197, 217 (2016) (citing *Commonwealth v. Treiber,* 632 Pa. 449, 466, 121 A.3d 435, 445 (2015)) ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

Accordingly, we affirm the PCRA court's decision to deny Appellant's petition without a hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/23/2026