For the foregoing reasons, the order of the Commonwealth Court is affirmed.

**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert M. THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 27, 2000.

Filed June 1, 2001.

Caroline Roberto, Pittsburgh, for appellant.

Michael W. Streily, Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before: EAKIN, STEVENS, and OLSZEWSKI, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following Appellant's conviction on two counts of criminal trespass and one count of carrying a firearm without a license. On appeal, Appellant contends that (1) the evidence was insufficient to sustain Appellant's conviction for criminal trespass, (2) the suppression court erred in denying Appellant's motion to suppress the evidence seized by the police, (3) trial counsel was ineffective in failing to present testimony establishing that Scott's Lawn Care was not open on the day in question, and (4) trial counsel was ineffective in failing to challenge the constitutionality of the criminal trespass scheme as it relates to simple trespass.[1] We affirm.

¶ 2 Appellant's first contention is that the evidence was insufficient. "The law is settled in this Commonwealth that in reviewing the sufficiency of the evi-

---

1. Appellant's issues have been renumbered for the sake of effective appellate review.

dence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth,...[as verdict winner]." *Commonwealth v. Earnest*, 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. *Id.*

¶ 3 Using the aforementioned standard, the evidence adduced at trial, together with all reasonable inferences in favor of the Commonwealth, reveals the following: On August 8, 1999, Nancy Stambolis was standing on the inside stairway of her house at 154 Kingsdale Road when Appellant, who Mrs. Stambolis did not know, entered the house. Mrs. Stambolis asked Appellant to leave and, upon hearing the yelling, Mrs. Stambolis's husband, Chris, entered the room. Mr. Stambolis told Appellant to leave and escorted him out of the house. Appellant indicated that three men were following him and asked the Stambolises to call the police. The Stambolises looked outside, were unable to see anyone, but called the police to report Appellant's unauthorized entry into their home.

¶ 4 Shortly after the incident with the Stambolises, Curt Samson, who lived at 114 Kingsdale Road with his father, Bruce Samson, heard noise at the back door, which was closed but not locked. Suddenly, Appellant, who Curt recognized, burst into the Samsons' home and asked Curt to call the police. While Appellant ran up the stairs to the second floor, Curt woke his father and told him that Appellant had entered the house. Mr. Samson told his son to dial 911 and report the incident to the police. Mr. Samson and Curt looked outside, but did not see anyone.

¶ 5 Police Officer David Killian received a dispatch pertaining to 154 and 114 Kingsdale Road, and proceeded thereto.

Upon arrival at 114 Kingsdale Road, Officer Killian knocked on the door, and was permitted entry by Mr. Samson. Officer Killian found Appellant inside and observed that he was agitated, nervous, and sweating profusely. Mr. Samson and his son told Officer Killian about the incident and informed him that Appellant believed someone was chasing him.

¶ 6 Officer Killian looked outside, but did not see anything suspicious. Because Appellant appeared to be unstable and was in the house without permission, Officer Killian handcuffed Appellant and asked him what he was doing in Mr. Samson's residence. Appellant told the officer that he believed he was being chased and had entered 154 and 114 Kingsdale Road to hide. Officer Killian asked Appellant whether he had any sharp objects in his possession, and Appellant told him that he had a handgun in his waistband. Officer Killian removed the gun and patted down Appellant. During the pat down, Officer Killian found a magazine clip on Appellant's person.

¶ 7 Appellant was transported to police headquarters, and he was charged with various offenses. On January 31, 2000, represented by H. David Rothman, Esquire, Appellant filed a motion seeking to suppress all physical evidence and statements made to the police, a hearing was held on the matter, and the trial court denied the suppression motion. Appellant proceeded to a bench trial, and the trial court convicted Appellant of two counts of criminal trespass and one count of carrying a firearm without a license. On April 3, 2000, the court sentenced Appellant to six to twelve months in prison, to be followed by five years of probation.

¶ 8 Represented by Caroline M. Roberto, Esquire, Appellant filed a motion seeking to modify his sentence, which the trial court denied, and this timely appeal fol-

lowed. The trial court ordered Appellant to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement, Appellant filed a statement on August 23, 2000 and a supplemental statement on August 25, 2000, and the trial court filed an opinion.

¶ 9 18 Pa.C.S.A. § 3503 provides, in relevant part, that "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he: (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof;..."

¶ 10 In the case *sub judice,* Mr. and Mrs. Stambolis testified that on August 8, 1999, Appellant entered their occupied residence without permission. Mrs. Stambolis yelled for Appellant to leave, but he did not do so until Mr. Stambolis physically escorted Appellant from the premises. Moreover, Mr. Samson and his son testified that Appellant entered their occupied residence without permission and did not leave until the police arrived. As such, we find that the evidence was sufficient to convict Appellant of criminal trespass.

¶ 11 We specifically note that we are not persuaded by Appellant's argument that he should not have been convicted of criminal trespass since he "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." While such an affirmative defense exists under 18 Pa.C.S.A. § 3503(c)(3), we conclude that the trier of fact was free to disbelieve Appellant's testimony with regard thereto. *See Commonwealth v. Steward,* 2001 WL 418818 (Pa.Super.2001) (holding that credibility determinations are for the finder of fact).

Specifically, the trial court was free to believe that Appellant's explanation as to why he entered the victims' residences was a pretext for some other criminal motive, and, therefore, that Appellant did not reasonably believe that the victims would permit entry into their home. Such a finding is supported by the evidence.

¶ 12 For example, while Appellant contended that three men were chasing him when he entered the victims' homes, none of the victims observed people, automobiles, or suspicious activity outside their homes. Also, Officer Killian testified that he saw no activity suggesting that Appellant was chased by three men in a car. Finally, Appellant admitted that he did not run to a nearby police station, with which he was familiar, and he did not go to his sister's house, which is also located on Kingsdale Road. As such, the trial court properly convicted Appellant on two counts of criminal trespass.

■ ¶ 13 Appellant's next contention is that the suppression court erred in failing to grant Appellant's motion to suppress the statements given to and the evidence seized by Officer Killian.[2] Specifically, Appellant contends that (1) no reasonable suspicion existed for Officer Killian to detain Appellant in the Samson house, (2) Officer Killian failed to advise Appellant of his *Miranda*[3] warnings prior to interrogating Appellant at the Samson house, (3) Officer Killian improperly frisked Appellant since he failed to articulate specific facts from which he could infer that Appellant was armed and dangerous, and (4) Officer Killian improperly exceeded the scope of the frisk.

---

**2.** We note that Appellant has failed to indicate whether he is challenging the search and seizure under the United States or Pennsylvania Constitutions. In any event, we conclude that

Appellant's challenges fail under both Constitutions.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–79 (1992).

■ ¶ 14 With regard to Appellant's first suppression issue, that Officer Killian did not have reasonable suspicion to support the investigative detention of Appellant in the Samson house, we disagree.[4]

■ ¶ 15 "The police are permitted to stop and briefly detain citizens whenever they have a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *Commonwealth v. Allen,* 555 Pa. 522, 527, 725 A.2d 737, 740 (1999) (citations omitted).

[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped for criminal activity. Thus, to establish grounds for reasonable suspicion, the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity is afoot. . . . [T]he test we apply remains an objective one and will not be satisfied by an officer's hunch or particularized suspicion.

*Commonwealth v. Beasley,* 761 A.2d 621, 625–626 (Pa.Super.2000) (citations omitted).

■ ¶ 16 "The following factors must be considered in justifying an investigatory stop: the specificity of the description in conjunction with how well the suspect fits the description, the proximity of the suspect to the crime, the time and place of the confrontations, and the nature of the crime being reported." *Commonwealth v. Douglass,* 701 A.2d 1376, 1380 (Pa.Super.1997) (citation omitted).

¶ 17 Here, we conclude that Officer Killian had, at the very least, a reasonable suspicion, based on specific and articulable facts, to stop and detain Appellant. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Officer Killian testified that, while he was on duty, he received a dispatch that a man had entered a home on Kingsdale Road without permission. N.T. 2/16/00 at 6. While travelling to Kingsdale Road, he received a dispatch that the man was presently at 114 Kings-

---

4. There exists three types of police/citizen interaction: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Beasley,* 761 A.2d 621 (Pa.Super.2000). In light of the fact Appellant was handcuffed while in the Samson home, we conclude that Appellant was not subjected to a mere encounter. *See Beasley, supra.* However, since Appellant has not alleged that his initial detention was custodial in nature, we need not determine whether his encounter with Officer Killian in the Samson house was investigative or custodial in nature. With regard to this issue, we will assume, *arguendo,* that Appellant's detention was, as alleged by Appellant, an investigative detention and not a custodial detention.

dale Road. N.T. 2/16/00 at 6. Officer Killian entered 114 Kingsdale Road, observed Appellant in the residence, and was told by the homeowner, Mr. Samson, that Appellant did not have permission to be in the home. N.T. 2/16/00 at 7–8. Officer Killian testified that Appellant was sweating profusely and appeared to be nervous. N.T. 2/16/00 at 8. As such, Officer Killian handcuffed Appellant and proceeded to ask him questions. We conclude that, based on the totality of the circumstances, Officer Killian acted appropriately when he detained Appellant in order to investigate the matter further.

¶ 18 In his second suppression issue, Appellant contends that his statement that he had a gun in his waistband was made during custodial interrogation, and, since Officer Killian failed to advise Appellant of his *Miranda* warnings prior to questioning Appellant, Appellant's statement should have been suppressed.

¶ 19 *Miranda* warnings are required where a suspect is subject to custodial interrogation. Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. *See Commonwealth v. Pitts,* 740 A.2d 726 (Pa.Super.1999). A person is in custody for the purposes of *Miranda* where he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Pitts,* 740 A.2d at 731 (quotation and quotation marks omitted).

¶ 20 In the case *sub judice,* Officer Killian asked Appellant if "he had any knives, needles, razor blades, anything sharp that could cut [him]," and Appellant replied that "he had a gun in his waistband." N.T. 2/16/00 at 11. Assuming, *arguendo,* that Appellant was in custody, we conclude that Officer Killian's question was not reasonably likely to elicit Appellant's incriminating response. Officer Killian clearly asked Appellant whether he possessed any sharp objects; he did not ask Appellant whether he possessed weapons in general. Moreover, even if the trial court erred in failing to suppress Appellant's statement, the error was harmless. As will be discussed *infra,* it is clear that the gun would have been properly discovered when Officer Killian patted down Appellant, and, therefore, the trier of fact would have been aware that the gun was in Appellant's possession.

¶ 21 In his third and fourth suppression issues, Appellant argues that Officer Killian improperly removed the gun from Appellant's waistband and improperly patted down Appellant under *Terry, supra.* Specifically, Appellant contends that Officer Killian did not reasonably believe that his safety was in jeopardy since Appellant was handcuffed and that the subsequent pat down exceeded the scope of *Terry.* The Commonwealth, on the other hand, contends that Officer Killian's seizure of Appellant's gun and the subsequent pat down were justified as a search incident to an arrest. We agree with the Commonwealth's assertion.

¶ 22 An officer may conduct a full custodial search of a suspect when the suspect is lawfully arrested. When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed. Consequently, the propriety of a search depends upon the validity of the arrest.

In determining whether Appellant was lawfully arrested, we begin with the notion that law enforcement authorities must have a warrant to arrest an individual...unless they have probable cause to believe that (1) a felony has been committed; and (2) the person to be arrested is the felon. [Generally], a

warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer.

\* \* \*

To determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. [P]robable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

*Commonwealth v. Clark*, 558 Pa. 157, 162–163, 735 A.2d 1248, 1251, (1999) (citations omitted).

¶ 23 Here, prior to the search, Officer Killian had probable cause to arrest Appellant for criminal trespass, which is a felony of the third degree. Specifically, Officer Killian received numerous dispatches indicating that Appellant was attempting to enter or had entered numerous houses on Kingsdale Road. When Officer Killian arrived at the Samson house, he observed Appellant sitting in the house, noticed that Appellant appeared to be sweating and nervous, and was told by Mr. Samson that Appellant did not have permission to enter the house. At this point, even without Appellant's admission that he was carrying a gun, Officer Killian was permitted to arrest Appellant, and, therefore, he properly searched Appellant incident to a lawful arrest.

¶ 24 We note that it is irrelevant whether Officer Killian formally announced he was arresting Appellant before Officer Killian patted down Appellant or after such action. As long as Officer Killian had probable cause to arrest at the time of the search, and the circumstances revealed an intent to take Appellant into custody, Officer Killian was permitted to search Appellant pursuant to a lawful arrest. *See Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988). *See also Commonwealth v. Wright*, 560 Pa. 34, 742 A.2d 661 (1999) (holding that search incident to arrest must be substantially contemporaneous with the arrest).

¶ 25 Appellant's next contention is that trial counsel was ineffective in failing to present the testimony of Diane Scott, who would have testified that Scott's Lawn Care was closed on the day in question, and, therefore, Appellant could not have sought a safe harbor therefrom.[5]

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests.... [Finally,] the ac-

---

5. The Commonwealth argues that Appellant's issue is waived since it was not raised in his initial Pa.R.A.P.1925(b) statement and the supplemental statement was untimely. We disagree. Pa.R.A.P.1925(b) provides that an appellant must file a statement within fourteen days of the **entry** of the trial court's order. Here, the trial court's order was filed on August 11, 2000, and Appellant's supplemental statement was filed on August 25, 2000, the fourteenth day after the order was filed. As such, the supplemental statement was timely filed. Since the Commonwealth has failed to cite any authority indicating that a supplemental statement is not permitted, we will address Appellant's issue regarding the absence of Ms. Scott's testimony for the sake of judicial economy. However, to the extent Appellant contends trial counsel should have entered into evidence a photograph depicting Scott's Lawn Care's sign, we find the issue to be waived since it was not raised in either the initial or supplemental Pa.R.A.P.1925(b) statement.

cused must demonstrate that counsel's ineffectiveness worked to his prejudice.

\* \* \*

■ To prevail on a claim for ineffective assistance of counsel for failure to call witnesses, [A]ppellant must demonstrate: (1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on Appellant's behalf; and (5) that the absence of the testimony prejudiced. . .Appellant.

*Commonwealth v. Steward,* 2001 WL 418818 *9 (2001) (citations and quotations omitted).

¶ 26 In the case *sub judice,* Appellant provided this Court with an affidavit from Diane Scott, the owner of Scott's Lawn Care. Ms. Scott indicated that during the month of August 1999, the store was closed on Sundays, including the date in question. However, Ms. Scott did not aver that she was available to testify at Appellant's bench trial or that she would have testified favorably for Appellant. Moreover, Appellant has not averred that trial counsel was or should have been aware of Ms. Scott's existence. As such, we decline to find trial counsel ineffective on this basis.

■ ¶ 27 Appellant's final contention is that trial counsel was ineffective in failing to challenge the constitutionality of the criminal trespass scheme as it relates to simple trespass. The trial court found Appellant's issue to be waived since Appellant failed to specify precisely how the scheme was unconstitutional. That is, the trial court declined to address Appellant's general, nonspecific claim. We find Appellant's issue to be waived under *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998).[6]

¶ 28 In his Pa.R.A.P.1925(b) statement, Appellant indicated that "[c]ounsel was ineffective for failing to challenge the constitutionality of the criminal trespass statutory scheme as it relates to 18 Pa.C.S.A. §§ 3503(a) and 3503(b.1) simple trespasser." In his appellate brief, Appellant specifically contends that his sentence for criminal trespass violates the Eighth Amendment of the United States Constitution since the sentence was excessive as compared to a sentence generally given for simple trespass. We conclude that the issue raised in Appellant's Pa.R.A.P. 1925(b) claim was too vague for the trial court to identify.

■ ¶ 29 In *Lord,* 553 Pa. at 418, 719 A.2d at 308, the Pennsylvania Supreme Court reasoned that:

The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler,* 756 A.2d 55, 57 (Pa.Super.2000) (brackets and quotation marks omitted), *appeal granted,* 564 Pa. 471, 769 A.2d 442, 2001 Pa. LEXIS 602 (2001). In other words, a Pa.R.A.P.1925(b) statement which is too vague to allow the court to identify

---

6. The trial court declined to discuss Appellant's issue pursuant to *Commonwealth v. McGill,* 545 Pa. 180, 680 A.2d 1131 (1996) (holding that a claim of ineffective assistance of counsel cannot be supported by general allegations). It is well settled that we may affirm on different grounds. *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412 (1990).

the precise issue raised on appeal is equivalent to *no statement at all.* In the case *sub judice,* Appellant's issue raised in the Pa.R.A.P.1925(b) statement was not specific enough for the trial court to address, and, therefore, we find Appellant's issue to be waived.

¶ 30 For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 31 Affirmed.