J-S43014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW MOSLEY | : | |
| | : | |
| Appellant | : | No. 406 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 6, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000699-2018

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                    FILED DECEMBER 30, 2020

Appellant, Andrew Mosley, appeals from the March 6, 2020 judgment of sentence entered in the Court of Common Pleas of Fayette County following a nonjury trial.  We affirm.

The trial court, the Honorable Nancy D. Vernon, summarized the procedural history as follows:

> Appellant was found guilty of Receiving Stolen Property, 18 Pa.C.S.A. § 3925(a), Possession of Firearm Prohibited, 18 Pa.C.S.A. § 6105(a)(1), three counts of Possession with Intent to Deliver, 35 [P.S.] § 780-113(a)(30), and four counts [of] Possession, [35 P.S.] § 780-113(a)(16).
>
> Appellant was sentenced to a term of incarceration of five to ten years on Count 2—Possession of Firearm Prohibited and three to six years on Count 3—Possession with Intent to Deliver[,] and no further penalty was imposed for the remaining convictions.

Opinion in Support of Non-Jury Verdict, 4/6/20, at 1.

The suppression court, the Honorable Steve P. Leskinen, summarized the background of the case, as follows:

[Appellant] was on State Parole when Pennsylvania State Parole Agents, namely Agent Derrick Eberhardt, Agent Timothy Murphy, and Agent Rhonda Bogus, along with other members of law enforcement, performed a Probation Check on [Appellant] at his residence in Fayette County on February 8, 2018. Agent Eberhardt testified that they needed numerous members of law enforcement present because [Appellant] had a history of attempting to run from them. Agent Murphy was at the back of the residence and alerted Agent Eberhardt that he observed, through a window, an individual present in the home. The door to the interior of [Appellant's] residence was not secure[,] and when Agent Eberhardt knocked, it opened; Agent Eberhardt entered the residence.

[Appellant] was on State Parole and his Conditions Governing Parole, signed by [Appellant], was admitted into evidence. One of the conditions was that [Appellant] expressly consented to the search of his person, property, and residence without a warrant by agents of the Pennsylvania Board of Probation and Parole.

[Appellant] was the only individual present during this event[,] and Agent Eberhardt observed [Appellant] continuing to nervously look[] back and forth at a room and Agent Eberhardt when he tried to make contact with [Appellant]. Pursuant to his observations, Agent Eberhardt placed [Appellant] in custody and performed a search on [Appellant's] person; [Appellant] had five (5) strips of Suboxone on his person[,] and he did not have a prescription for Suboxone. Agents performed a safety sweep of [Appellant's] residence[,] and Agent Murphy found, in plain view, a white substance in small baggies that [was] contained in a larger bag, which appeared to be consistent with crack cocaine. Agent Murphy called for Agent Eberhardt to observe the potential contraband, Agent Eberhardt testified that he attempted to pass off [Appellant] into another Agent's custody then [Appellant], at that time, tried to run away, but he was unsuccessful.

At this time, some of the law enforcement officers left the residence to obtain a search warrant to conduct a search of the residence. In the interim, [Appellant] made some inculpatory

- 2 -

statements to members of law enforcement that remained at his residence. The Agents testified that [Appellant] was never read his Miranda[1] rights but they never asked [Appellant] any questions or interrogated him in any way. The Agents testified that [Appellant] was visibly disappointed in his actions and was talking aloud to himself. [Appellant] made statements to the effect that he was a bad drug dealer, he should not have purchased a gun, and that he was trying to get money quick to help his mother. When the law enforcement officers returned with a search warrant, their subsequent search of the residence uncovered a Springfield XD-45 semi–automatic firearm in [Appellant's] bedroom.

Suppression Court Opinion, 6/21/18, at unnumbered 1–2.

Appellant filed an omnibus pretrial motion on May 16, 2018. Judge Leskinen held a suppression hearing on June 13, 2018, following which he denied the suppression motion. Appellant pled guilty on February 5, 2019, but filed a motion to withdraw the plea, which was granted on February 26, 2019. Appellant proceeded to trial before Judge Vernon on February 25, 2020, and was convicted and sentenced as described supra. Appellant filed a timely appeal; both Appellant and the trial court complied with Pa.R.A.P. 1925. The trial court relied on the Opinion and Order filed June 21, 2018, by Judge Leskinen for the disposition of the issue raised in Appellant's Pa.R.A.P. 1925(b) statement.

Appellant raises the following two issues on appeal:

Question 1: Whether the suppression court erred by not suppressing evidence recovered from Appellant and Appellant's residence when authorities lacked reasonable suspicion to search Appellant's person and property?

_____

[1] Miranda v. Arizona, 384 U.S 436 (1966).

Question 2: Whether the suppression court erred by not suppressing Appellant's statement to authorities that he possessed a controlled substance?

Appellant's Brief at 7 (full capitalization omitted).[2]

The standard of review an appellate court applies when considering an order denying a suppression motion is well established. "On review from an order suppressing evidence, we 'consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.'" Commonwealth v. Johnson, 202 A.3d 125, 127 (Pa. Super. 2019). "This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error." Commonwealth v. Haynes, 116 A.3d 640, 644 (Pa. Super. 2015). Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and the evidence presented by Appellant that remains uncontradicted. Commonwealth v. Harlan, 208 A.3d 497, 499 (Pa. Super.

_____

[2] The Commonwealth's suggestion that Appellant's claims are waived because he did not file an appeal from the denial of his suppression motion is rejected outright. Commonwealth's Brief at 7. A defendant in a criminal case may not appeal from an order of a suppression court even if it is postured as a cross-appeal filed in conjunction with the Commonwealth's appeal of a suppression order. 26A Standard Pennsylvania Practice 2d § 132:595; Commonwealth v. Fisher, 221 A.2d 115 (Pa. 1966); Commonwealth v. Parker, 173 A.3d 294 (Pa. Super. 2017).

2019). Additionally, we may consider only the evidence presented at the suppression hearing. In re L.J., 79 A.3d 1073, 1085–1087 (Pa. 2013).

Our Supreme Court has summarized state parole agents' authority and duties with respect to parolees as follows:

> [S]tate parole agents' authority and duties with respect to parolees are prescribed by two sections of the Prisons and Parole Code. Section 6152 declares agents to be peace officers and provides them with police power to arrest without warrant any parolee under supervision for violating parole conditions. See 61 Pa.C.S. § 6152. Section 6153 deems parole agents to be in a "supervisory relationship with their offenders," aimed at assisting parolees in rehabilitation and reassimilation and protecting the public. Id. § 6153(a). This section further outlines the procedures and requirements for agents to search the person and property of offenders, see id. § 6153(b)(1), (d), and provides that such searches must comport with the protections of the United States and Pennsylvania Constitutions, see id. § 6153(b)(2). Another provision prevents the exclusion of evidence from parole or criminal proceedings based solely on a violation of the statute. See id. § 6153(c).

Commonwealth v. Mathis, 173 A.3d 699, 701–702 (Pa. 2017) (footnote omitted).

We note that Appellant cites case law only for the standards that apply to evaluation of his case; he does not cite to any cases that support his argument. In his first issue, Appellant asserts that the "mere fact that he was looking to the rear of the residence does not amount to reasonable suspicion [to search] pursuant to 61 Pa.C.S. § 6153." Appellant's Brief at 14. Appellant further contends that the Commonwealth failed to present evidence that Agent Eberhardt "reasonably believed" Appellant was "armed and dangerous." Id. Finally, Appellant posits that "there was no reasonable suspicion articulated

by the state parole agents to justify a search of Appellant's residence." Id. at 16.

The suppression court responded to these claims, and they are supported by the record. The suppression court stated:

> In this case, [Appellant's] signed parole agreement was entered into evidence and he consented to warrantless searches of his person, property, and residence. Even with this signed agreement, Agents still need to have reasonable suspicion to conduct a search. When Agent Eberhardt entered the residence, he intended to make contact with [Appellant], as he did, he observed [Appellant] acting odd and nervously looking back and forth between he and a room in [Appellant's] residence. Based on Agent Eberhardt's observations, experience, [Appellant's] history of offenses, and his proclivity to run from law enforcement, Agent Eberhardt had reasonable suspicion that [Appellant] was in possession of contraband and was justified to detain [Appellant], search his person and the residence.
>
> When Agent Murphy entered the room [Appellant] was nervous, . . . he found, in plain view, a white substance in multiple baggies contained in a larger bag; the substance was observed to be consistent with crack cocaine. After these observations, the law enforcement officers applied for a warrant to search the residence, a valid warrant was obtained and the ensuing search uncovered a Springfield XD-45 semiautomatic firearm in [Appellant's] bedroom. [Appellant] was a person who was not supposed to possess a firearm.

Suppression Court Opinion, 6/21/18, at unnumbered 4.

Contrary to Appellant's suggestion, and as supported by the suppression court and the record, Agent Eberhardt's reasonable suspicion was not based solely on Appellant's furtive movements. Our review of the record substantiates that Appellant "kept looking like he wanted to go back to the rear of the residence. He kept like starting to step that direction." N.T.,

6/13/18, at 12. Agent Eberhardt testified that when Agent Murphy asked him to come to the back bedroom, he "handed [Appellant] off to Agent Bogus . . . and [Appellant] immediately pulled away from the agents and from the other officers and ran through the front door of the residence and onto [the] porch," where he was detained by a constable. Id. at 13. Agent Eberhardt testified that Agents Bogus and Murphy accompanied him as well as German Township Police Officer Toski, Masontown Police Officer O'Barto, and Pennsylvania State Constable Smith[3] were all present "due to our knowledge of [Appellant's] history and both his criminal history [and] parole history." Id. at 8. Due to the agents' experience dealing with Appellant in the past, as amplified by his movements on the day in question, the trial court correctly concluded that the facts established reasonable suspicion to search. "In conducting a reasonable suspicion inquiry, a suppression court is required to 'afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience.'" Commonwealth v. Carter, 105 A.3d 765, 773 (Pa. Super. 2014) (quoting Commonwealth v. Brown, 996 A.2d 473, 477 (Pa. 2010)). "Among the circumstances that can give rise to reasonable suspicion are the officer's knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices." Carter, 105 A.3d at 773.

_____

[3] The first names of these officers were not provided at the suppression hearing.

The record supports the conclusion that the agents were lawfully positioned within Appellant's residence for a parole check. Based on their observations, prior experience with Appellant, and given the totality of the circumstances, Appellant was lawfully detained and searched.

In his second issue, Appellant maintains that statements he made to the agents should have been suppressed because he was not given Miranda warnings. Appellant's Brief at 16. He submits that there is no question that he was in custody, and the only reason that he was detained at the residence by the agents during the search was to "illicit [sic] an incriminating response based on their findings." Id. at 17. Once again, Appellant fails to support his claim with relevant case law. Id. at 16–17.

The suppression court addressed this issue as follows:

> Miranda warnings are required when the accused is subject to custodial interrogation. Commonwealth v. Thompson, 778 A.2d 1215, 1221 (Pa. Super. 2001). A person is in custody for the purposes of Miranda where he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." Id. Interrogation occurs where the officer knows that their words or actions are reasonably likely to provoke an incriminating response from the suspect. Id. The "special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." Commonwealth v. Bland, 115 A.3d 854, 857 (Pa. 2015).

Opinion and Order, 6/21/18, at unnumbered 4–5.

Our review of the record confirms that there is no disagreement that Appellant was in custody during the search. Commonwealth's Brief at 9.

However, merely being "in custody" for Miranda purposes is not equivalent to custodial interrogation. "Miranda warnings are necessary only when the suspect is subjected to custodial interrogation." Commonwealth v. Fisher, 769 A.2d 1116, 1125 (Pa. 2001). "Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. (citation omitted).

As observed by the suppression court:

In the current case, [Appellant] was in police custody, however, the Agents testified that they never asked [Appellant] any questions or made any comments to him other than their attempts to console him because he was visibly upset over the situation. Further testimony provided that [Appellant] was talking to himself, in a manner that was loud enough for the law enforcement officers to hear, and made inculpatory statements on his own volition.

Opinion and Order, 6/21/18, at unnumbered 5.

Agent Eberhardt testified that Appellant:

was very emotional. He was physically upset with himself. He was crying off and on about the situation. He said he was disappointed with himself, his mother would be upset. The entire time that we were there, he continually just made statements about how stupid the decision was that he made to sell drugs. The decision that he had made to purchase the gun, I think he said for 25 or $50.00.

N.T., 6/13/18, at 17. The suppression court interjected with, "Just to be clear, was someone asking him about these things?" Id. Agent Eberhardt replied,

"[W]e in no way questioned him about what he was doing or, you know, anything. He just kept continually talking." Id.

Agent Bogus concurred that Appellant "was very distraught." N.T., 6/13/18, at 25. She described the same statements that Appellant spontaneously uttered, and explained that Appellant was "talking to himself, just being mad at himself." Id. Agent Murphy testified similarly that he did not question Appellant and he spontaneously described having a weapon and drugs. Id. at 30.

The record reflects that Appellant initiated the conversation with the agents. His admissions were voluntary and not responsive to any query by the agents. See Commonwealth v. Gibson, 720 A.2d 473, 480 (Pa. 1998) (The defendant's "statements to the police . . . were made voluntarily and were not responsive to any queries by the officers; rather, [the defendant] initiated the conversation."). Appellant's comments were mere gratuitous utterances, unsolicited by the agents, and therefore were admissible and did not require Miranda warnings. See also Commonwealth v. Fisher, 769 A.2d 1116, 1125 (Pa. 2001) ("Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself.") (citation omitted). Similar to Fisher, although Appellant was in custody, the agents neither questioned Appellant nor initiated conversation. Fisher, 769 A.2d at 1125. As our Supreme Court stated,

"Appellant's remarks, being unsolicited, not the result of custodial interrogation, constituted spontaneous, voluntary statements not subject to suppression." Id.

Thus, as found by the suppression court, although Appellant was not read his Miranda rights, "he was never subjected to a custodial interrogation and thus Miranda was not required. Therefore, [Appellant's] statements were not given in violation of Miranda." Opinion and Order, 6/21/18, at unnumbered 5.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2020